Andrew McClain, J.,
dissenting:
The prisoner was indicted for a fraudulent breach of trust. It is charged that he, as agent or bailer of one Bingham, received from the State Treasurer the sum of fifty dollars and fifty cents, for said Bingham; *106 and having the money so in his possession, fraudulently appropriated a portion of it to his own use, making false representations to the said Bingham, as to the amount he had received.
It appears that the money paid by the State was for services rendered in going to Kentucky, and bringing back to Tennessee fugitives from justice.
A lengthy account, with numerous probates appended, appears to have been filed in the office of the Comptroller, amounting to over six hundred dollars. This money was claimed by Bingham, with others, Bingham’s share being, as it is alleged, fifty dollars and fifty cents.
A receipt was produced, purporting to have been signed by the prisoner, acknowledging the receipt of 1689.20 from the Treasurer of the State, and showing on its face that it was paid on account of arresting two fugitives from justice. The signature of the prisoner to this receipt was proved to be genuine. The State next proceeded, contrary to the objections of the counsel of the prisoner, to introduce what is called Exhibit B, which purports to be a copy of the original lengthy account, with pro rates we have before referred to, on file in the office of the Comptroller. This copy was admitted to go to the jury, together with the two following alleged certificates of the Comptroller. The first is in these words:
“I certify that the foregoing is correct, as appears from vouchers, etc., now on file in my office.
“G. W. BlackbuRN.

“Comptroller’s Office,

“Nashville, Tenn., Feb. 18, 1869.”
*107 It will be observed that this paper is not signed officially, but only by G. W. Blackburn, with these words supplied: “Comptroller’s Office, Nashville, Tenn., Eeb. 1869.”
The other writing is in these words:
“ Comptroller’s Office,
“Nashville, Term., Feb. 18, 1869.
“As the State Treasurer is absent from his office at this time, I add this certificate, that the receipt given by me to L. L. Bingham, signed by Mr. Reeves, as proof that the said Reeves received the $689.20, was left in this office, as proof that the Treasurer had paid that amount of money — this being the manner in which checks were kept between this office and that of the State Treasurer.
“G. W. BlacburN, Comptroller.”
These two certificates of G. W. Blackburn were read to the jury, it appears, the prisoner, by his counsel, objecting.
Section of the Code, 3791, provides that, “duly certified copies of all records and entries, official bonds or other papers belonging to any public office, or by authority of law filed to be kept therein, are evidence in all cases.”
It admits of serious doubt, in view of section 5342 of the Code, which provides that expenses of the character referred to in Exhibit B are to be paid by the Treasurer, upon the warrant of the Governor, whether this paper was such as to be properly filed in the office of the Comptroller. But I deem it unnecessary to intimate any opinion as to the true construction of that *108 section of tbe Code, when taken in connection with other provisions of law.
But if it be conceded that this paper, of which Exhibit B purports to be a copy, was properly filed with the Comptroller, the certificate of the Comptroller is clearly insufficient.
The official character of the paper does not sufficiently appear, either by anything in the body of the instrument, or by anything appended to the signature.
But, besides all questions pertaining to the paper so certified, it is plain that the introduction of this second certificate appended to the first, is not warranted by any rule of evidence.
This instrument contains a mere gratuitous statement of the Comptroller as to the absence of the Treasurer, and explains why the receipt was filed in his office, and explains the mode of transacting business between the offices of the Treasurer and Comptroller.
It does not purport to be a copy, or to certify a copy of any record or paper in his office.
But outside of these objections to the introduction of these papers, there is still another, by no means free from difficulty. The Constitution guarantees to the prisoner the right to meet the witness face to face.
We percieve no necessity or authority to depart from this cherished rule, by permitting papers purporting to have been signed by the Comptroller, even if their official character hád been properly indicated, to be read as evidence against the prisoner.
I think the judgment ought to be reversed, and the cause remanded.